1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    ISAAC VASQUEZ,                                No.  2:18cv0073 TLN KJN (HC)

12                    Petitioner,

13         v.                                       FINDINGS & RECOMMENDATIONS

14    M. ELIOT SPEARMAN,

15                    Respondent.

16

17    I.  Introduction

18          Petitioner is a state prisoner, proceeding without counsel, with an application for a writ of

19    habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges his 2012 conviction for second

20    degree murder, four counts of attempted murder, and shooting at an inhabited dwelling.

21    Petitioner was originally sentenced to a total of 129 years and 4 months in state prison.  His

22    sentence was later reduced on remand following direct appeal.  Petitioner claims that:  (1) his

23    constitutional right to confront witnesses was violated by the gang expert's reliance on

24    testimonial hearsay in forming his opinion as proffered by the People; (2) the trial court erred in

25    excluding a portion of his statement to police pursuant to California Evidence Code section 356;

26    (3) the trial court erroneously permitted expert opinion testimony concerning the likelihood of

27    petitioner and his co-defendants firing first in violation of petitioner's due process rights; (4) trial

28    counsel provided ineffective assistance for failing to ensure the trial court ruled on a request to

introduce a Facebook post by the victim on the date of the incident; and, finally, (5) cumulative error.  After careful review of the record, this court concludes that the petition should be denied.

II.  Procedural History

On August 2, 2012, a jury found petitioner guilty of second degree murder (Cal. Pen. Code,[1] § 187(a) [count 1]), four counts of attempted murder (§ 664/187(a) [counts 2-5]), and shooting at an inhabited dwelling (§ 246 [count 6]).  Further, numerous firearm related enhancements were found true as to all counts (§§ 12022.5(a)(1), 12022.53(c) & (d) & (e)(1)), as was an enhancement that the offenses were committed for the benefit of a criminal street gang (§186.22(b)(1)).  The special circumstance of shooting a firearm from a motor vehicle with the intent to inflict great bodily injury (§ 190(d)) was also found true as to the second degree murder conviction.  (LD 2 at 374-85.)[2]  On September 14, 2012, petitioner was sentenced to state prison as follows: to an indeterminate term of 120 years-to-life for the second degree murder (count 1) and to a determinate term of 9 years and 4 months for the attempted murder (counts 2-5) and shooting at an inhabited dwelling (count 6) convictions.  (LD 2 at 464-67.)

Petitioner appealed the conviction to the California Court of Appeal, Third Appellate District.  The Court of Appeal modified the judgment "to strike the gang enhancement findings under [] section 186.22, subdivision (b), and vicarious firearm enhancement findings under [] section 12022.53, subdivision (e)(1), as well as the sentences imposed thereon," but otherwise affirmed the convictions on September 6, 2016.  (See ECF Doc. 12-1 & LD 17.)

Petitioner filed a petition for review in the California Supreme Court (LD 19[3]), which was denied on December 19, 2016.  (LD 21.[4])

---

[1] Further statutory references are to the California Penal Code unless otherwise indicated.

[2] "LD" refers to the documents lodged with this court by respondent on June 13, 2018; "ECF" refers to the docket entries in this court's electronic case management filing system and the page numbers assigned by that system.

[3] The cover page for LD 19 erroneously identifies the document as "Amended Abstract of Judgment."

[4] The cover page for LD 21 erroneously identifies the document as "Petitioner's Co-Defendant's Petition for Review."

1    The Sacramento County Superior Court filed amended abstracts of judgment on January

2    26, 2017, reflecting that petitioner was resentenced to a determinate term of 9 years, 4 months,

3    plus an indeterminate term of 20 years-to-life in state prison.  (LD 22.[5])

4    Petitioner filed the instant petition on January 12, 2018.  (ECF No. 1.)  Respondent

5    answered on May 23, 2018.  (ECF No. 12.)

6    III.  Preliminary Statement

7    Petitioner's habeas petition is comprised of the form petition and attachments as

8    supporting argument or points and authorities for the five grounds raised therein.  More

9    particularly, the attached portions are arguments asserted in the Petition for Review filed with the

10   California Supreme Court and an argument taken from a codefendant's opening brief, joined by

11   petitioner, in the direct review proceeding before the Third District Court of Appeal.  (Cf. ECF

12   No. 1 to LD 19 to LD 13 at 11-19.)

13   This court's task on federal habeas review is to assess whether the state appellate court

14   determinations of the claims presented to it were unreasonable or contrary to existing federal law,

15   or whether the state court's factual determinations were unreasonable.  28 U.S.C. § 2254(d).  In

16   this case, those determinations were made by the Third District Court of Appeal.  Therefore, to

17   the degree petitioner's arguments here reference a basis for the California Supreme Court to grant

18   review, the arguments are not addressed.  Rather, the undersigned treats these arguments as

19   asserting that the state court determinations were unreasonable, thus entitling petitioner to relief

20   in this court.

21   IV.  Facts[6]

22   In its unpublished memorandum and opinion affirming petitioner's judgment of

23   conviction on appeal, the California Court of Appeal for the Third Appellate District provided the

24   following factual summary:

25   _____

26   [5] The cover page for LD 22 erroneously identifies the document as "Amended Order Denying
Review."

27   [6]  The facts are taken from the published opinion of the California Court of Appeal for the Third
Appellate District in People v. Cornejo, 3 Cal.App.5th 36 (2016), a copy of which was lodged by

28   respondent as LD 17.

Deandre Ellison was shot to death as he drove into his driveway in the Del Paso Heights neighborhood of Sacramento. Four other men, including Latrele Neal, were also in Ellison's car. Before the car came to a stop in the driveway, an SUV driven by Jesse Cornejo slowly drove past Ellison's house; the SUV's front and backseat passengers, Adam Cornejo and Isaac Vasquez, opened fire on Ellison's car.[] Neal managed to return fire with Ellison's gun before the SUV drove away. About 20 bullets were exchanged between the vehicles. Bullets also struck Ellison's house. Ellison was the only casualty. After crashing the SUV while being pursued by law enforcement, Adam, Jesse, and Isaac were taken into custody a short time later. Each was a Norteño gang member. Isaac was 16 years old with a developmental disability; Adam and Jesse were 17 and 18 years old, respectively.

(People v. Cornejo, 3 Cal.App.5th 36, 41-42 (2016), fn. omitted; see also ECF No. 12-1 & LD 17.)

V.  Standards for a Writ of Habeas Corpus

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States.  28 U.S.C. § 2254(a).  A federal writ is not available for alleged error in the interpretation or application of state law.  See Wilson v. Corcoran, 562 U.S. 1, 5 (2010); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

For purposes of applying § 2254(d)(1), "clearly established federal law" consists of holdings of the United States Supreme Court at the time of the last reasoned state court decision.

1    Thompson v. Runnels, 705 F.3d 1089, 1096 (9th Cir. 2013) (citing Greene v. Fisher, 132 S. Ct.

2    38, 44-45 (2011)); Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011) (citing Williams v.

3    Taylor, 529 U.S. 362, 412 (2000)).  Circuit court precedent "may be persuasive in determining

4    what law is clearly established and whether a state court applied that law unreasonably." Stanley,

5    633 F.3d at 859 (quoting Maxwell v. Roe, 606 F.3d 561, 567 (9th Cir. 2010)).  However, circuit

6    precedent may not be "used to refine or sharpen a general principle of Supreme Court

7    jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced." Marshall

8    v. Rodgers, 569 U.S. 58, 64 (2013) (citing Parker v. Matthews, 132 S. Ct. 2148, 2155 (2012) (per

9    curiam)).  Nor may it be used to "determine whether a particular rule of law is so widely accepted

10   among the Federal Circuits that it would, if presented to th[e] [Supreme] Court, be accepted as

11   correct.  Id.  Further, where courts of appeals have diverged in their treatment of an issue, it

12   cannot be said that there is "clearly established Federal law" governing that issue.  Carey v.

13   Musladin, 549 U.S. 70, 77 (2006).

14        A state court decision is "contrary to" clearly established federal law if it applies a rule

15   contradicting a holding of the Supreme Court or reaches a result different from Supreme Court

16   precedent on "materially indistinguishable" facts.  Price v. Vincent, 538 U.S. 634, 640 (2003).

17   Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the

18   writ if the state court identifies the correct governing legal principle from the Supreme Court's

19   decisions, but unreasonably applies that principle to the facts of the prisoner's case. [7] Lockyer v.

20   Andrade, 538 U.S. 63, 75 (2003); Williams v. Taylor, 529 U.S. at 413; Chia v. Cambra, 360 F.3d

21   997, 1002 (9th Cir. 2004).  In this regard, a federal habeas court "may not issue the writ simply

22   because that court concludes in its independent judgment that the relevant state-court decision

23   applied clearly established federal law erroneously or incorrectly.  Rather, that application must

24   also be unreasonable." Williams v. Taylor, 529 U.S. at 411.  See also Schriro v. Landrigan, 550

25   U.S. 465, 473 (2007); Lockyer, 538 U.S. at 75 (it is "not enough that a federal habeas court, in its

26   ───────────────

27   [7]  Under § 2254(d)(2), a state court decision based on a factual determination is not to be
     overturned on factual grounds unless it is "objectively unreasonable in light of the evidence
     presented in the state court proceeding." Stanley, 633 F.3d at 859 (quoting Davis v. Woodford,

28   384 F.3d 628, 638 (9th Cir. 2004)).

1    'independent review of the legal question,' is left with a '"firm conviction"' that the state court

2    was '"erroneous"'").  "A state court's determination that a claim lacks merit precludes federal

3    habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's

4    decision."  Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541

5    U.S. 652, 664 (2004)).  Accordingly, "[a]s a condition for obtaining habeas corpus from a federal

6    court, a state prisoner must show that the state court's ruling on the claim being presented in

7    federal court was so lacking in justification that there was an error well understood and

8    comprehended in existing law beyond any possibility for fair-minded disagreement."  Richter,

9    562 U.S. at 103.

10       If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing

11   court must conduct a de novo review of a habeas petitioner's claims.  Delgadillo v. Woodford,

12   527 F.3d 919, 925 (9th Cir. 2008); see also Frantz v. Hazey, 533 F.3d 724, 735 (9th Cir. 2008)

13   (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of

14   § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by

15   considering de novo the constitutional issues raised.").

16       The court looks to the last reasoned state court decision as the basis for the state court

17   judgment.  Stanley, 633 F.3d at 859; Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).

18   If the last reasoned state court decision adopts or substantially incorporates the reasoning from a

19   previous state court decision, this court may consider both decisions to ascertain the reasoning of

20   the last decision.  Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc).  "When a

21   federal claim has been presented to a state court and the state court has denied relief, it may be

22   presumed that the state court adjudicated the claim on the merits in the absence of any indication

23   or state-law procedural principles to the contrary."  Richter, 562 U.S. at 99.  This presumption

24   may be overcome by a showing "there is reason to think some other explanation for the state

25   court's decision is more likely."  Id. at 99-100 (citing Ylst v. Nunnemaker, 501 U.S. 797, 803

26   (1991)).  Similarly, when a state court decision on petitioner's claims rejects some claims but

27   does not expressly address a federal claim, a federal habeas court must presume, subject to

28   rebuttal, that the federal claim was adjudicated on the merits.  Johnson v. Williams, 568 U.S. 289,

6

298 (2013) (citing Richter, 562 U.S. at 98).  If a state court fails to adjudicate a component of the petitioner's federal claim, the component is reviewed de novo in federal court.  Wiggins v. Smith, 539 U.S. 510, 534 (2003).

Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d).  Stanley, 633 F.3d at 860; Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).  "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable."  Himes, 336 F.3d at 853.  Where no reasoned decision is available, the habeas petitioner still has the burden of "showing there was no reasonable basis for the state court to deny relief."  Richter, 562 U.S. at 98.

A summary denial is presumed to be a denial on the merits of the petitioner's claims.  Stancle v. Clay, 692 F.3d 948, 957 & n.3 (9th Cir. 2012).  While the federal court cannot analyze just what the state court did when it issued a summary denial, the federal court must review the state court record to determine whether there was any "reasonable basis for the state court to deny relief."  Richter, 562 U.S. at 98.  This court "must determine what arguments or theories . . . could have supported the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court."  Id. at 101.  The petitioner bears "the burden to demonstrate that 'there was no reasonable basis for the state court to deny relief.'"  Walker v. Martel, 709 F.3d 925, 939 (9th Cir. 2013) (quoting Richter, 562 U.S. at 98).

When it is clear, however, that a state court has not reached the merits of a petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal habeas court must review the claim de novo.  Stanley, 633 F.3d at 860; Reynoso v. Giurbino, 462 F.3d 1099, 1109 (9th Cir. 2006).

VI.  Petitioner's Claims

A. *Gang Expert Testimony*

Petitioner claims that the gang expert's testimony violated his constitutional right to

7

confrontation when the expert relied upon testimonial hearsay to form his opinion.  (ECF No. 1 at 19-26; see also LD 19 at 2-16.)  Respondent maintains the state court's determination that any error was harmless was reasonable and thus precludes federal habeas relief.  (ECF No. 12 at 18-20.)

The last reasoned rejection of petitioner's first claim is the decision of the California Court of Appeal for the Third Appellate District on petitioner's direct appeal.  The state court addressed this claim as follows:

> [Reversal of the gang enhancement findings by this court as to all defendants following the Supreme Court's recent decision in *People v. Prunty* (2015) 62 Cal.4th 59] makes it unnecessary to address defendants' additional, and arguably meritorious, assertion that the trial court prejudicially erred and violated their constitutional right of confrontation by admitting expert gang testimony concerning the basis for the expert's conclusions they were active Norteño gang members.  (See *People v. Sanchez* (2016) 63 Cal.4th 665, 670-671, 204 Cal.Rptr.3d 102, 374 P.3d 320 ["case specific statements related by the prosecution expert concerning defendant's gang membership constituted inadmissible hearsay" and "[s]ome of those hearsay statements were also testimonial and therefore should have been excluded under *Crawford*[ *v. Washington* (2004) 541 U.S. 36 [124 S.Ct. 1354, 158 L.Ed.2d 177]]"].) And while defendants also assert such a confrontation violation would require reversal of their underlying convictions, as well as the gang enhancements, we disagree. The evidence establishing their guilt of the underlying crimes was very strong, as we explain more fully later in this opinion. Setting aside any testimonial hearsay conveyed to the jury through the gang expert, we would conclude beyond a reasonable doubt the jury would have convicted defendants of the underlying crimes.

(People v. Cornejo, 3 Cal.App.5th at 75, n.3; see also LD 17 at 4, n.3 & LD 18.)

#### Applicable Legal Standards

The standard from Brecht v. Abrahamson, 507 U.S. 619 (1993), governs the harmless-error inquiry.  See Dixon v. Williams, 750 F.3d 1027, 1034 (9th Cir. 2014) (per curiam).  Under Brecht, a petitioner can obtain federal habeas relief only if "the error had substantial and injurious effect or influence in determining the jury's verdict."  507 U.S. at 637.  To satisfy this standard, the court must have "grave doubt" as to the outcome, meaning that "in the judge's mind, the

1    matter is so evenly balanced that he feels himself in virtual equipoise as to the harmlessness of the

2    error."  See O'Neal v. McAninch, 513 U.S. 432, 435 (1995).  The Brecht standard applies "in

3    virtually all" section 2254 cases, and only in rare cases involving truly egregious errors can a

4    federal court grant habeas relief without the harmless-error inquiry.  See Fry v. Pliler, 551 U.S.

5    112, 117, 121-22 (2007) (on federal habeas review, the Brecht standard applies whether or not the

6    state court has applied harmless error analysis under Chapman v. California, 386 U.S. 18 (1967)).

7                              Analysis

8         The undersigned considers whether the Third District Court of Appeal's determination

9    that any error was harmless was a reasonable determination in light of Supreme Court precedent.

10   It was a reasonable determination.

11        The state appellate court referenced very strong evidence of petitioner's guilt over and

12   above the gang evidence.  The undersigned's review of the record reveals there is, as respondent

13   argues, significant other evidence of petitioner's guilt.  (See, e.g., petitioner's fleeing the scene of

14   the shooting from which consciousness of guilt can be inferred [LD 3 755; LD 7 496-513, 515-

15   18, 521-23, 526-30, 548-50; LD 8 657; LD 10 1296-297], gunshot residue findings [LD 8 800-06,

16   509-810], ballistics findings [LD 8 843-52, 854-56, 874, 877], and other witness testimonies [LD

17   6 140-47, 295, 297-98, 300; LD 7 355-61, 454-62].)   As a result of the review, the undersigned

18   finds a substantial and injurious effect did not arise from any such error, nor does the undersigned

19   have a grave doubt as to the outcome in this case.  Brecht, 507 U.S. at 637; O'Neal, 513 U.S. at

20   435.

21        The state court's decision was not contrary to, or an unreasonable application of, clearly

22   established federal law, nor was its finding was based on an unreasonable application of the facts.

23   28 U.S.C. § 2254(d).  As a result, the undersigned recommends the claim be denied.

24        B.    *Trial Court's Ruling Concerning California Evidence Code Section 356*

25        Petitioner claims that his due process rights were violated when the trial court refused to

26   allow the conversation between he and Detective Kirtlan into evidence because the portion

27   admitted during the prosecution's direct examination of the detective inculpated petitioner as the

28   shooter of the fatal bullet and otherwise did not allow for the jury to hear petitioner's claims of

9

1   self-defense during the interview.  (ECF No. 1 at 26-30; see also LD 12 at 27-38.)  Respondent

2   contends the claim is not cognizable for purpose of federal habeas review and must be denied.

3   (ECF No. 12 at 21-25.)

4         The last reasoned rejection of petitioner's second claim is the decision of the California

5   Court of Appeal for the Third Appellate District on petitioner's direct appeal.  The state court

6   addressed this claim as follows:

> Isaac contends the trial court prejudicially erred and violated his
> constitutional rights by allowing one of the detectives in the case to
> convey a misleading portion of his police statement rather than
> require the prosecution to play the entire statement for the jury. We
> disagree.
>
> A.
>
> Additional Background
>
> Ellison was killed by a nine–millimeter bullet. Police found multiple
> nine–millimeter and 10–millimeter shell casings in the street in front
> of Ellison's house. As mentioned, they found the corresponding 10–
> millimeter handgun along the chase route. However, while police
> also found a magazine for a nine–millimeter handgun along the chase
> route, they did not find the gun itself.
>
> Detective Kirtlan interviewed Isaac after the shooting. The detective
> told Isaac police had found the 10–millimeter handgun and the nine–
> millimeter magazine, but were still looking for the 9–millimeter
> handgun. He also explained it was a "public safety issue" to have a
> gun left out on the street, especially since there would be children
> walking down that street on their way to school the next morning.
> Isaac then discussed the matter with his stepmother, who had joined
> him in the interview room, and ultimately agreed to point out the
> location of the missing handgun. The detective brought in a map of
> the area and Isaac pointed out the location he believed "they throwed
> it out."
>
> The prosecution moved in limine to be allowed to elicit testimony
> from Detective Kirtlan that Isaac told him the location where he
> believed police would be able to find the gun, despite the fact Isaac
> "arguably" invoked his right to remain silent under *Miranda v.
> Arizona* (1966) 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694
> (*Miranda*) prior to providing the location, under "the 'public safety'
> exception to the Miranda rule." [9] The prosecutor explained: "What
> I proposed rather than playing the tape was to ask Detective Kirtlan
> did you receive information from [defendant] Isaac Vasquez as to

where you might find the missing nine millimeter gun? Yes. Did you look for it in that location? Yes. Did you find it? No."

In response, Isaac's trial counsel argued: "I think that there is ... [an Evidence Code section] 356 problem. I think that the throwing of the gun is being used to show consciousness of guilt, whereas Isaac's statement during this long period that he was interrogated and questioned was that this was self-defense. So I think that you need to get in the entire statement so that the jury could, in essence, understand that." Counsel also expressed concern that limiting the testimony to Isaac providing the location of the gun "gives a false impression that if he's saying where the gun was thrown, then it gives the impression that he threw the gun, and that's a significant issue."

The prosecutor argued in reply: "As far as [Evidence Code section] 356, I don't know that there is anything in his self-serving statements to [Isaac's stepmother] or even his inculpatory statements to [his stepmother] that explained the limited part that I'm trying to get out, where could they look for the gun. [¶] One of the things that has already been raised here by [counsel for Jesse] is that the police didn't do their job, didn't look for the .40 caliber, didn't even bother to look for the .40 caliber, didn't even bother to find it. Now, that's the one that was used by Latrele Neal. But it should at least be shown that the officers made attempts to find the outstanding nine millimeter. [¶] Because one of the other arguments counsel can make, well, maybe if we had the nine millimeter we could have—if they had done their job and looked for that maybe we could have done some testing on that or figured out which one of them fired it. There's nothing in any of the witness statements, even the witnesses who saw the ten millimeter being thrown from the car that indicates who in the car threw it. [¶] Now, in his statement, that portion of it I think he indicates or the officer indicates that it was thrown at we know who threw the gun. I'm simply trying to get before the jury that the officers attempted to locate it. They attempted to get information. They got information, and they went to look for it. But there's nothing in the statements that he makes to [his stepmother] or the lies that he makes to Detective Kirtlan initially that explains that or adds to it or clears anything up."

The trial court ruled that admitting the fact Isaac provided the location of the gun to police would not violate *Miranda*.

The trial court further ruled Evidence Code section 356 did not require "allowing an entire expansive rambling statement encompassing a number of topics to address a sole and easily isolated question such as we have in this case."

Finally, the court explained the prosecution's intended use of Isaac's

11

statement as to the location of the nine–millimeter handgun did not "over-implicate" Isaac or "misrepresent" he was the one who threw the gun out of the Explorer.

In accordance with the trial court's ruling, during the prosecution's examination of Detective Kirtlan, the following exchange occurred:

"Q Did you receive information from [defendant] Isaac Vasquez about the location of a missing nine-millimeter semiautomatic handgun?

"A Yes, I did.

"Q Did you go to the area after receiving that information and search the area where it was thought that that gun might be?

"A Yes, ma'am.

"Q And where was that location?

"A Essentially in the area of Northgate and Striker in North Sacramento.

"Q Now, is that an area where other evidence had been located?

"A Yes, ma'am.

"Q What other evidence had been located there?

"A A magazine to a nine-millimeter semiautomatic handgun.

"Q Did you find the nine-millimeter semiautomatic handgun?

"A No, we did not."

B.

Analysis

Evidence Code section 356 provides: "Where part of an act, declaration, conversation, or writing is given in evidence by one party, the whole *on the same subject* may be inquired into by an adverse party; when a letter is read, the answer may be given; and when a detached act, declaration, conversation, or writing is given in evidence, any other act, declaration, conversation, or writing which is necessary to make it understood may also be given in evidence." (Italics added.)

This provision "is sometimes referred to as the statutory version of the common-law rule of completeness. [Citation.] According to the

12

common-law rule: ' "[T]he opponent, against whom a part of an utterance has been put in, may in his [or her] turn complement it by putting in the remainder, in order to secure for the tribunal a complete understanding of the total tenor and effect of the utterance." [Citation.]' [Citation.]" (*People v. Parrish* (2007) 152 Cal.App.4th 263, 269, fn. 3, 60 Cal.Rptr.3d 868.)

The purpose of the rule "is to prevent the use of selected aspects of a conversation, act, declaration, or writing, so as to create a misleading impression on the subjects addressed. [Citation.] Thus, if a party's oral admissions have been introduced in evidence, he [or she] may show other portions of the same interview or conversation, even if they are self-serving, which 'have some bearing upon, or connection with, the admission ... in evidence.' [Citations.]" (*People v. Arias* (1996) 13 Cal.4th 92, 156, 51 Cal.Rptr.2d 770, 913 P.2d 980.) We review the trial court's determination of whether or not to admit evidence under this provision for abuse of discretion. (See *People v. Pride* (1992) 3 Cal.4th 195, 235, 10 Cal.Rptr.2d 636, 833 P.2d 643.)

Here, Detective Kirtlan testified Isaac told him where the nine–millimeter handgun could be found, and after receiving this information, he went to a certain location where police found a magazine for a nine–millimeter handgun, but not the gun itself. Implicit in this testimony is that Isaac told the detective the gun could be found at that particular location. From this, and the fact the location was along the chase route, the jury could infer someone in the Explorer threw the gun out of the vehicle during the chase. The testimony does not reveal who threw the gun. Thus, the concern raised below that the testimony would misleadingly suggest Isaac was the one who threw the nine–millimeter handgun, and therefore likely fired the shot that killed Ellison, was obviated by the actual testimony received into evidence. Indeed, the prosecutor never argued, in either her closing or rebuttal argument, that Isaac fired the fatal shot. Instead, she specifically conceded, "we don't know who had the nine and who had the ten."

The other argument for admission of the entire statement, which was raised below, was the jury should hear the entirety of Isaac's statement, including the portion indicating the shooting was done in self-defense, to balance out the suggestion that throwing the gun out of the Explorer evidenced Isaac's consciousness of guilt. However, the trial court appeared to credit the prosecutor's assurance that Isaac's statement as to where the nine–millimeter handgun could be found was being offered solely on the issue of whether the police conducted a thorough investigation. (See 4 McKenna & Fishman, Jones on Evidence (7th ed. 2014) § 24:26 ["where the defendant challenges the investigation as unprofessional or sloppy or claims that he [or she] was falsely accused, the prosecutor should be entitled

13

to spell out the investigation in greater detail to rebut this defense"].) The prosecutor lived up to this assurance. At no point in her arguments to the jury did she argue the fact Isaac threw a handgun from the SUV evidenced his consciousness of guilt. Moreover, the rule of completeness prevents "'the use of selected aspects of a [statement] so as to create a misleading impression on the subjects addressed,'" and therefore "hinges on the requirement that the two portions of a statement be 'on the same subject.'" (*People v. Vines* (2011) 51 Cal.4th 830, 861, 124 Cal.Rptr.3d 830, 251 P.3d 943, italics added.) Here, whether Isaac told Detective Kirtlan where to find the 9–millimeter handgun is not the same subject as whether the shooting itself was done in self-defense. We acknowledge narrow lines should not be drawn around the exact subject of inquiry (*People v. Zapien* (1993) 4 Cal.4th 929, 959, 17 Cal.Rptr.2d 122, 846 P.2d 704), but the statutory language "on the same subject" cannot be rendered meaningless by an interpretation that draws no lines at all. (Evid. Code, § 356.)

Finally, we note Isaac raises a separate issue for the first time on appeal. He argues his exact statement to Detective Kirtlan, i.e., "they throwed it out" should have been admitted because it "was exculpatory in that it supported an inference that [Isaac] did not shoot the [nine–millimeter] gun that killed Ellison." Acknowledging admission of Isaac's statement, "they throwed it out" at the joint trial in this case, where Isaac did not testify, would have potentially violated his codefendants' confrontation rights under *People v. Aranda* (1965) 63 Cal.2d 518, 47 Cal.Rptr. 353, 407 P.2d 265 and *Bruton v. United States* (1968) 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476, Isaac argues the redaction of this statement to simply indicate he told Detective Kirtlan where the gun could be found prejudiced his defense. This argument is forfeited for failure to raise it in the trial court. (See *People v. Hill* (1992) 3 Cal.4th 959, 994–995, 13 Cal.Rptr.2d 475, 839 P.2d 984, overruled on another point in *Price v. Superior Court* (2001) 25 Cal.4th 1046, 1075, 108 Cal.Rptr.2d 409, 25 P.3d 618.)

The trial court did not abuse its discretion in ruling Evidence Code section 356 did not require admission of Isaac's entire statement to Detective Kirtlan.

(People v. Cornejo, 3 Cal.App.5th at 70-74, fn. omitted.)

### Applicable Legal Standards

Supreme Court precedent holds that defendants have a constitutional right to present relevant evidence in their own defense.  See Crane v. Kentucky, 476 U.S. 683, 690 (1986) ("[T]he Constitution guarantees criminal defendants a meaningful opportunity to present a

1    complete defense.") (internal quotation marks omitted).  The Supreme Court has indicated that a

2    defendant's right to present a defense stems both from the right to due process provided by the

3    Fourteenth Amendment, see Chambers v. Mississippi, 410 U.S. 284, 294 (1973), and from the

4    right "to have compulsory process for obtaining witnesses in his favor" provided by the Sixth

5    Amendment, see Washington v. Texas, 388 U.S. 14, 23 (1967) (explaining that the right to

6    compulsory process would be meaningless if the defendant lacked the right to use the witnesses

7    whose presence he compelled).

8            However, "[a] defendant's right to present relevant evidence is not unlimited, but rather is

9    subject to reasonable restrictions," such as evidentiary and procedural rules.  United States v.

10   Scheffer, 523 U.S. 303, 308 (1998).  In fact, "state and federal rulemakers have broad latitude

11   under the Constitution to establish rules excluding evidence from criminal trials," id., and the

12   Supreme Court has indicated its approval of "well-established rules of evidence [that] permit trial

13   judges to exclude evidence if its probative value is outweighed by certain other factors such as

14   unfair prejudice, confusion of the issues, or potential to mislead the jury," Holmes v. South

15   Carolina, 547 U.S. 319, 326 (2006).  Evidentiary rules do not violate a defendant's constitutional

16   rights unless they "infring[e] upon a weighty interest of the accused and are arbitrary or

17   disproportionate to the purposes they are designed to serve."  Id. at 324 (alteration in original)

18   (internal quotation marks omitted); see also Scheffer, 523 U.S. at 315 (explaining that the

19   exclusion of evidence pursuant to a state evidentiary rule is unconstitutional only where it

20   "significantly undermined fundamental elements of the accused's defense").  In general, it has

21   taken "unusually compelling circumstances . . . to outweigh the strong state interest in

22   administration of its trials."  Perry v. Rushen, 713 F.2d 1447, 1452 (9th Cir. 1983).

23           The Supreme Court has not squarely addressed the question whether an evidentiary rule

24   requiring a trial court to balance factors and exercise its discretion "infring[es] upon a weighty

25   interest of the accused" and is "arbitrary or disproportionate to the purposes [it is] designed to

26   serve."  Moses v. Payne, 555 F.3d 742, 758 (9th Cir. 2009) (quoting Scheffer, 523 U.S. at 308)

27   (internal quotation marks omitted).  Rather, as a "well-established rule[ ] of evidence" that

28   permits a court to exercise its discretion in excluding "evidence if its probative value is

1    substantially outweighed by the probability that its admission will (a) necessitate undue

2    consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues,

3    or of misleading the jury," California Evidence Code § 352 is more analogous to those

4    evidentiary rules described with approval in Holmes.  See Holmes, 547 U.S. at 326 ("While the

5    Constitution . . . prohibits the exclusion of defense evidence under rules that serve no legitimate

6    purpose or that are disproportionate to the ends that they are asserted to promote, well-established

7    rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by

8    certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the

9    jury").

10    "A habeas petitioner bears a heavy burden in showing a due process violation based on an

11    evidentiary decision."  Boyde v. Brown, 404 F.3d 1159, 1172 (9th Cir. 2005), as amended, 421

12    F.3d 1154 (9th Cir. 2005).

13                          Analysis

14    The undersigned notes initially that the state appellate court's factual recitations are

15    accurate and fully supported by the record.  28 U.S.C. § 2254(d)(2).  (See LD 2 at 354-60; LD 3

16    at 837-900; LD 4 at 901-33; LD 6 at 92-99; LD 8 at 601; LD 9 at 1118-162; LD 10 at 1225-241.)

17    California Evidence Code section 356 provides:

18             Where part of an act, declaration, conversation, or writing is given in
               evidence by one party, the whole on the same subject may be
19             inquired into by an adverse party; when a letter is read, the answer
               may be given; and when a detached act, declaration, conversation, or
20             writing is given in evidence, any other act, declaration, conversation,
               or writing which is necessary to make it understood may also be
21             given in evidence.

22

23    California's evidentiary rule parallels Federal Rule of Evidence 106.  See Beech Aircraft Corp. v.

24    Rainey, 488 U.S. 153, 172 (1988) ("[W]hen one party has made use of a portion of a document,

25    such that misunderstanding or distortion can be averted only through presentation of another

26    portion, the material required for completeness is ipso facto relevant and therefore admissible");

27    People v. Chism, 58 Cal.4th 1266, 1324 (2014) ("The purpose of Evidence Code section 356 is to

28    avoid creating a misleading impression") (citation omitted).

1      Insofar as petitioner is claiming state law error in limiting the evidence at issue, such a

2   claim is not cognizable on federal habeas review.  Estelle, 502 U.S. at 67; Jammal v. Van de

3   Kamp, 926 F.2d 918, 919 (9th Cir. 1991) ("We are not a state supreme court of errors; we do not

4   review questions of state evidence law").  The only cognizable question then is whether the trial

5   court's limitation of the evidence was so fundamentally unfair as to violate petitioner's rights.

6      The state appellate court's determination that the testimony by Kirtlan was limited in such

7   a way as to not indicate, much less reveal, who threw the gun from the Explorer, bolstered by the

8   fact the prosecutor never argued petitioner or any specific co-defendant was the one to throw the

9   gun, was reasonable.  Moreover, it was reasonable for the state court to find that where the

10  prosecution offered the limited evidence to refute defense claims of an incomplete investigation,

11  petitioner's claim of the need for self-defense during the interview period did not involve the

12  requisite same subject matter.

13     In sum, well settled Supreme Court jurisprudence dictates that "federal habeas corpus

14  relief does not lie for errors of state law."  Estelle v. McGuire, 502 U.S. at 67.  "[F]ailure to

15  comply with the state's rules of evidence is neither a necessary nor a sufficient basis for granting

16  habeas relief," as "it is certainly possible to have a fair trial even when the state standards are

17  violated."  Jammal v. Van de Kamp, 926 F.2d at 919.  Thus, petitioner's challenge to the state

18  court's exclusion of evidence under California Evidence Code section 356 is not cognizable on

19  federal habeas review.  See Adams v. Beard, 2015 WL 5895793, at *6-7 (C.D. Cal. Sept. 2, 2015)

20  (petitioner's claim that trial court abused its discretion in excluding evidence pursuant to § 356

21  was not a basis for federal habeas relief); Miller v. Adams, 2011 WL 7477034, at *22 (C.D. Cal.

22  Dec. 22, 2011) (holding the trial court's exclusion of evidence under § 356 was not "a basis for

23  federal habeas relief under AEDPA").  Nor could petitioner prevail on the merits for petitioner

24  has failed to show that any evidence excluded rendered his trial fundamentally unfair.  Hence, it

25  is recommended this claim be denied.

26     C.      *Testimony Regarding Who Fired First*

27     Next, petitioner argues his constitutional rights were violated when the trial court

28  permitted testimony by Detective Kirtlan and Detective Sample that in their opinion petitioner

17

and his codefendants were the first to fire their weapons.  (LD 12 at 76, 78-80; LD 13 at 23-31; LD 19 at 11-12.)  Respondent argues that the state court's determination of the claim was reasonable and that no Supreme Court precedent requires the evidence be excluded.  (ECF No. 12 at 25-28.)

The last reasoned rejection of petitioner's third claim is the decision of the California Court of Appeal for the Third Appellate District on petitioner's direct appeal.  The state court addressed this claim as follows:

*Admission of Certain Opinion Evidence*

Defendants further assert the trial court prejudicially erred by allowing expert opinion testimony that defendants probably fired first because Ellison would not have wanted to "attract trouble" to his home. Not so.

A.

*Additional Background*

Detective Jason Kirtlan interviewed Neal in the presence of Neal's attorney, who had secured an immunity agreement for Neal prior to the interview. During his cross-examination of Detective Kirtlan, Jesse's trial counsel asked: "Now, when [Neal] came to talk to you, isn't it true that the first thing you said to him is, I know you're the victim?" The detective answered: "Something to that effect, yes." Counsel then asked: "Wouldn't it have been better to wait until you had heard what he had to say before you accepted his innocence?" The detective responded: "As I discussed earlier, there was overwhelming evidence in this case, as I've outlined, as to why I felt he was the victim and fired back in self-defense, as shared with the D.A.'s office, who agreed, and in this case gave him a letter of immunity."

During the prosecution's redirect examination, the prosecutor asked Detective Kirtlan: "Is there anything other than what you've already stated, which is the placement of the casings and the evidence around the scene, the statements from [Boyd] and other witnesses and the overall ballistics evidence in the case, including the shot into [a neighboring] house, that causes you to take the position that, in fact, [Neal] was being truth[ful]—that [Neal] did fire back second?" The detective answered: "Yes, there is." Then, after various objections were overruled, he explained: "[Ellison] was pulling into his driveway. He was in his neighborhood. He is not going to attract, nor would the occupants of his vehicle, in my belief, attract trouble to their home. [¶] The [Explorer] was out of the area. They're south area occupants up in the north area in a vehicle with weapons. [Ellison] was pulling into his driveway. [¶] If they were—if [Neal] were to have shot, the vehicle gets away, now they know where to come back to retaliate. [¶] It doesn't make sense to me. And given the totality of

the rest of the evidence, that led me to my determination that the Taurus was fired on." Isaac's trial counsel then objected that the answer was an "[i]mproper opinion," which was overruled.

During Detective Sample's expert testimony, the prosecutor asked: "Assume that you have a gang member with several other people in his car. This gang member is feeling vulnerable. He has got a gun in his car. He's been threatened, he's been labeled a snitch. And he comes down the street and he sees other people coming towards him who are muggin' him, they don't—he doesn't know them, the people in his car don't know them, but they know that they are giving hard looks to him. [¶] Would it be consistent with your knowledge of gang members for those people feeling vulnerable to turn into a dead end and leave themselves open to attack?" Jesse's trial counsel objected that the answer was "speculative," which was overruled. The detective then answered: "No, it did not—it would not seem a likely response for somebody who's that alert to a possible threat."

B.

*Analysis*

Defendants argue the testimony of both detectives amounted to improper expert opinion for three reasons: (1) "the subject matter was not beyond the common experience of the average juror"; (2) "the opinion was essentially a question of whether the experts thought that Neal and [Boyd] were telling the truth when they testified that the [defendants] fired first"; and (3) because "the whole case boiled down to whether the jury determined that Neal fired first or they fired first," the testimony amounted to "their view of how the case should be decided." In response, the Attorney General draws a distinction between the two witnesses. With respect to Detective Kirtlan, the Attorney General argues the challenged testimony "was not admitted as his opinion on whether Neal in fact acted in self-defense," but rather "was properly admitted to rebut the implied bias raised by the defense under Evidence Code section 780, subdivision (f)," i.e., the detective concluded Neal fired in self-defense before speaking to him because of a prior working relationship with Ellison and Boyd because Ellison had cooperated in a previous case against a fellow gang member. With respect to Detective Sample, the Attorney General argues the challenged testimony was a proper expert opinion.

1. Detective Kirtlan's Testimony was Properly Admitted

"In determining the credibility of a witness, the jury may consider, among other things, '[t]he existence or nonexistence of a bias, interest, or other motive' for giving the testimony. (Evid. Code, § 780, subd. (f).)" (*People v. Price* (1991) 1 Cal.4th 324, 422, 3 Cal.Rptr.2d 106, 821 P.2d 610.) "Evidence showing a witness's bias or prejudice or which goes to his [or her] credibility, veracity or motive may be elicited during cross-examination." (*People v. Howard* (1988) 44 Cal.3d 375, 428, 243 Cal.Rptr. 842, 749 P.2d 279.) Here, Jesse's trial counsel properly sought to elicit such evidence during his cross-examination of Detective Kirtlan by asking

19

whether he was "frequently in contact" with Ellison and Boyd during his investigation of the previous case in which Ellison provided testimony against another gang member, which the detective admitted, and whether this working relationship made Detective Kirtlan "a little more emphatic" about "find[ing] the people that [he] believed were responsible," which the detective denied. Counsel then asked Detective Kirtlan about his interview with Neal, specifically, whether he accepted the fact Neal was an innocent victim before he even "heard what he had to say." The purpose for these questions, and the order in which they were asked, is unmistakable. Counsel was seeking to establish that the detective did not consider the possibility Neal could have started the gunfight by firing on the Explorer because of his bias in favor of Ellison, one of his "snitches."

In these circumstances, it was proper for the prosecution to then rehabilitate the detective by eliciting the reason he believed Neal did not fire first before he had spoken to the man. In other words, the challenged testimony was offered to show the detective's belief Neal fired in self-defense was based on reason, as opposed to mere bias, as the defense questioning suggested. (See, e.g., *People v. Nichols* (1970) 3 Cal.3d 150, 157, 89 Cal.Rptr. 721, 474 P.2d 673 [prosecution properly offered evidence of the reasonable basis for witness's testimony to rebut inference of bias raised by the defense on cross-examination].)

2. Detective Sample's Testimony was Properly Admitted

Expert opinion testimony must be "[r]elated to a subject that is sufficiently beyond common experience that the opinion of an expert would assist the trier of fact." (Evid. Code, § 801, subd. (a).) "The subject matter of the culture and habits of criminal street gangs ... meets this criterion." (*People v. Gardeley* (1996) 14 Cal.4th 605, 617, 59 Cal.Rptr.2d 356, 927 P.2d 713, disapproved on another point in *People v. Sanchez, supra*, 63 Cal.4th 665, 204 Cal.Rptr.3d 102, 374 P.3d 320.) Here, Detective Sample testified, based on his special knowledge, training, education, and experience working as a gang detective, that a gang member who is feeling vulnerable because he has been threatened and labeled a snitch would not be likely to turn into a dead end and leave himself open to attack.

Defendants argue this specific opinion was not sufficiently beyond common experience to be helpful to the jury because "[n]o sensible person, regardless of their gang status, would knowingly place themselves in a trap if they thought the[y] were under threat." We disagree. While no sensible person would pull into his own driveway and start a gunfight with no means of escape, whether a gang member would do so is not something the average juror would know. Nor was Detective Sample's testimony simply an opinion as to whether Neal and Boyd had testified truthfully concerning how the gunfight occurred, or as to how the jury should ultimately decide the case.

The trial court did not abuse its discretion in allowing the challenged testimony of Detectives Kirtlan and Sample.

(People v. Cornejo, 3 Cal.App.5th at 51-54.)

1          Applicable Legal Standards

2          A state court's admission of evidence under state evidentiary law will form the basis for

3   federal habeas relief only where the evidentiary ruling "so fatally infected the proceedings as to

4   render them fundamentally unfair" in violation a petitioner's due process rights.  Jammal v. Van

5   de Kamp, 926 F.2d at 919.  "[F]ailure to comply with the state's rules of  evidence is neither a

6   necessary nor a sufficient basis for granting habeas relief."  Id.

7          The United States Supreme Court has "defined the category of infractions that violate

8   'fundamental fairness' very narrowly," Dowling v. United States, 493 U.S. 342, 352 (1990), and

9   "has made very few rulings regarding the admission of evidence as a violation of due process,"

10  Holley v. Yarborough, 568 F.3d 1091, 1101 (9th Cir. 2009).  It has opted not to hold that

11  evidence of other crimes or bad acts "so infused the trial with unfairness as to deny due process of

12  law."  Estelle, 502 U.S. at 75 & n.5 (noting that the Court "express[ed] no opinion on whether a

13  state law would violate the Due Process Clause if it permitted the use of 'prior crimes' evidence

14  to show propensity to commit a charged crime").  Moreover, the Supreme Court "has not yet

15  made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due

16  process violation sufficient to warrant issuance of the writ."  Holley, 568 F.3d at 1101 (citing

17  Carey v. Musladin, 549 U.S. at 77).  In the absence of clearly established law that admission of

18  even overtly prejudicial evidence constitutes a due process violation, the court cannot conclude

19  that the state court's ruling was an "unreasonable application."  Id.; see also Larson v. Palmateer,

20  515 F.3d 1057, 1066 (9th Cir. 2008) (holding that because the Supreme Court has expressly

21  reserved the question of whether using evidence of a defendant's past crimes to show that he has

22  a propensity for criminal activity could ever violate due process, the state court did not

23  unreasonably apply clearly established law in determining that the admission of defendant's

24  criminal history did not violate due process).  A federal court is "without power" to grant a

25  habeas petition based solely on the admission of evidence.  Id.

26          Even setting aside the issue of clearly established federal law, "[a] habeas petitioner bears

27  a heavy burden in showing a due process violation based on an evidentiary decision."  Boyde v.

28  Brown, 404 F.3d at 1172.  Again, "'[t]he admission of evidence does not provide a basis for

21

1   habeas relief unless it rendered the trial fundamentally unfair in violation of due process.'"

2   Holley, 568 F.3d at 1101.  "Only if there are *no* permissible inferences the jury may draw from

3   evidence can its admission violate due process."  Alcala v. Woodford, 334 F.3d 862, 887 (9th Cir.

4   2003) (emphasis in original); Houston v. Roe, 177 F.3d 901, 910 n.6 (9th Cir. 1999).  "Even then,

5   the evidence must 'be of such quality as necessarily prevents a fair trial.'"  Jammal v. Van de

6   Kamp, 926 F.2d at 920 (citation omitted).  Such can only occur if the admission of the evidence

7   had a "'substantial and injurious effect or influence in determining the jury's verdict.'"  Brecht,

8   507 U.S. at 623 (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)).

9                    Analysis

10          First, the undersigned finds the state court's factual determinations are accurate as

11   revealed by a review of the record.  28 U.S.C. § 2254(d)(2).  (See LD 7 590-600; LD 8 601-51;

12   LD 9 925-1033.)

13          Under California law, expert testimony on criminal street gangs is admissible to prove the

14   elements of the criminal street gang substantive offense and the gang enhancement.  See People v.

15   Jasso, 211 Cal.App.4th 1354, 1377 (2012) (relying on expert testimony in part to support a

16   conviction for the substantive offense); see also People v. Hernandez, 33 Cal.4th 1040, 1047-048

17   (2004) ("In order to prove the elements of the criminal street gang enhancement, the prosecution

18   may, as in this case, present expert testimony on criminal street gangs").  Petitioner nonetheless

19   argues that Detectives Kirtlan's and Sample's testimony was improper because the opinion

20   testimony improperly invaded the province of the jury on ultimate issues in the case.  Petitioner

21   argued on direct appeal that this testimony violated state law, but federal habeas relief is not

22   available for errors of state law.  Estelle, 502 U.S. at 67-68.  He additionally argues in his petition

23   that the testimony deprived him of due process in violation of federal law.  But under federal law,

24   there is no support for "the general proposition that the Constitution is violated by the admission

25   of expert testimony concerning an ultimate issue to be resolved by the trier of fact."  Moses v.

26   Payne, 555 F.3d at 761.  "[I]t is 'well-established... that expert testimony concerning an ultimate

27   issue is not per se improper.'  Although '[a] witness is not permitted to give a direct opinion about

28   the defendant's guilt or innocence...an expert may otherwise testify regarding even an ultimate

                                          22

1   issue to be resolved by the trier of fact.'" Id. (internal citations omitted); see also Duvardo v.

2   Giurbino, 410 F.Appx. 69, 70 (9th Cir. 2011) (noting that the Supreme Court "has never held that

3   the admission of expert testimony on an ultimate issue to be resolved by the trier of fact violates

4   the Due Process Clause"); Briceno v. Scribner, 555 F.3d 1069, 1077-78 (9th Cir. 2009), overruled

5   on other grounds as recognized in Emery v. Clark, 643 F.3d 1210, 1215 (9th Cir. 2011).  Indeed,

6   the Ninth Circuit has recently reiterated that "because 'there is no clearly established

7   constitutional right to be free of an expert opinion on an ultimate issue...the admission of the

8   opinion testimony of [a gang expert] cannot be said to be contrary to, or an unreasonable

9   application of, Supreme Court precedent.'"  Maquiz v. Hedgpeth, 907 F.3d 1212, 1217 (9th Cir.

10   2018) (quoting Briceno, 555 F.3d at 1077-78).

11        Petitioner claims that the detectives' testimony was offered merely to opine that Neal was

12   credible, but the Third District Court of Appeal's determination that the evidence was not "simply

13   an opinion as to whether Neal and Boyd had testified truthfully concerning how the gunfight

14   occurred," Cornejo, 3 Cal.App.5th at 53-54, was neither unreasonable nor contrary to federal law.

15   Petitioner is thus not entitled to relief on any argument advanced in support of this claim; and the

16   undersigned recommends the claim be denied.

17        D.    *Evidence Concerning the Victim's Facebook Post*

18        Petitioner argues his constitutional rights were violated when the trial court did not permit

19   him to introduce evidence of a Facebook post made by the victim on the date of the incident.

20   (ECF No. 1 at 34-38; see also LD 12 at 76-77; LD 13 at 11-19, 22-23.)  In reply, respondent

21   maintains the claim is procedurally barred, and that, in any event, the state court's denial of the

22   claim was not unreasonable.  (ECF No. 12 at 29-37.)

23        The last reasoned rejection of petitioner's fourth claim is the decision of the California

24   Court of Appeal for the Third Appellate District on petitioner's direct appeal.  The state court

25   addressed this claim as follows:

26               *Exclusion of Defense Evidence*

27          Defendants claim the trial court prejudicially erred and violated their

           constitutional right to due process by excluding evidence of a post

28          made to Ellison's Facebook page on the day of the shooting, which

they argue indicated Ellison "had reentered gang life" and "was associating with gang members." According to defendants, this evidence was highly probative of their defense, i.e., Ellison was killed in self-defense after Neal opened fire on them, because "the people in Ellison's car had the same motivations to shoot first as the gang expert attributed to [defendants]." Defendants also claim the excluded evidence "would [have] support[ed] the defense contention that Ellison drove his car in a way to force [defendants] to stop in front of his house" and "would [have] rebut[ted] [Boyd's] testimony that Ellison only purchased the gun because he was afraid of being attacked because he was cooperating with the police."

A.

*Additional Background*

Jesse moved in limine to introduce a printout from Ellison's Facebook page that included a post made around two hours before the murder. The post stated: "GET MONEY TRUST NOT A SOUL MONEY AND MURDER I SWEAR IM BACK AT IT AGAIN WHO CAN I TRUST IN THIS WORLD? ? ? ? ? ? ? ? ? ? ? ? ? ? ? ? ? ? GET ACTIVE." The printout also included Ellison's profile picture, in which he was apparently making a gang sign with his hands.

Jesse's trial counsel argued the post was relevant to show Ellison's state of mind at the time of the shooting, i.e., he and the other occupants of the Taurus "were expecting to get hit" and "were expecting trouble," which he argued was "very probative of who fired first." Counsel also argued the post was admissible despite the hearsay rule because it qualified as a statement of Ellison's then-existing state of mind and a statement against penal interest. Counsel further argued Boyd, who also had access to Ellison's Facebook account, could authenticate the post. Isaac's attorney joined in these arguments.

In response, the prosecutor did not object to the profile picture being admitted, but argued defense counsel was attempting to "circumvent the hearsay rules and circumvent the foundational requirements" by seeking to admit the Facebook post. With respect to hearsay, the prosecutor did not actually make an argument. With respect to foundation, the prosecutor questioned whether counsel would be able to establish Ellison "did in fact, make that entry."

After further argument from defense counsel, the trial court took the matter under submission.

Trial began without a ruling on admissibility of the Facebook post. The following exchange occurred during Jesse's cross-examination of Neal:

"Q Did you also say that [Ellison] don't even gang bang no more?

"A Yes, I did say that. He did not gang bang anymore.

24

1    "Q You don't know—you say you know that for a fact?

2    "A I know that for a fact. [¶] He got married and he was a family—
     was a family man. He was changing his life. His grandma had just
3    passed away. He had just got saved. [¶] He was—he was a totally
     different dude that I know from growin' up with. I know for a fact he
4    did not gang bang anymore.

5    "Q Did you ever go on his Facebook page?

6    "A Yes, I did.

7    "Q When was the last time you went on his Facebook page?

8    "A Um, I been on there after he was killed. I been on there before he
     was killed."
9
     At this point, counsel again sought to admit the Facebook post,
10   arguing the post was admissible under Evidence Code section 780 as
     evidence tending to disprove the truthfulness of Neal's testimony that
11   Ellison was no longer "gang banging." The trial court ruled the post
     inadmissible under Evidence Code section 352, as requiring the jury
12   to "embark on ... something that's a bit of a side show, and that is the
     question of whether or not [Neal] believes [Ellison] was involved as
13   a gang banger at the time." The trial court then instructed the jury
     to disregard Neal's "opinions as to whether or not [Ellison] was or was
14   not involved actively as a member of a gang."

15                                     B.

16                                 *Forfeiture*

17   We first note neither Jesse's trial counsel, nor counsel of either co-
     defendant, pressed for a ruling on the matter of whether or not the
18   Facebook post was admissible as substantive evidence Neal fired
     first, prompting Adam and Isaac to return fire in self-defense. (See
19   *People v. Braxton* (2004) 34 Cal.4th 798, 813–814, 22 Cal.Rptr.3d
     46, 101 P.3d 994 [failure to press for a ruling generally forfeits
20   contention of error].) Indeed, Adam's trial counsel did not join in the
     argument in the first place. (See *People v. Wilson, supra*, 44 Cal.4th
21   at p. 793, 80 Cal.Rptr.3d 211, 187 P.3d 1041 [failure to join in the
     objection or motion of a codefendant generally forfeits the issue on
22   appeal].) When the matter of the Facebook post was revisited during
     Jesse's cross-examination of Neal, counsel sought to admit the
23   evidence to impeach Neal's testimony that Ellison was no longer a
     gang member, but did not indicate to the trial court he was also
24   pressing for a ruling on whether the evidence was admissible to prove
     self-defense. Thus, the trial court ruled the Facebook post was not
25   admissible to impeach Neal under an Evidence Code section 352
     analysis. The trial court never ruled on the initial motion to admit this
26   evidence to prove self-defense, nor did any of the defendants press
     the trial court to do so. By failing to press for a ruling—and in Adam's
27   case, by failing to join in the argument altogether—defendants have
     forfeited their now-joint contention the trial court prejudicially erred
28   and violated their due process rights by excluding the proffered

                                      25

1       evidence.

2                                    C.

3                   *Ineffective Assistance of Counsel*

4       Anticipating forfeiture, Jesse argues his trial counsel rendered
        constitutionally deficient assistance by failing to "explicitly argue
5       that the fact that Ellison had returned to an active gang life would
        tend to show that he and his associates ... were just as likely to fire
6       first as were Jesse and his associates." Adam and Isaac join in this
        argument as well, which we interpret as arguing their respective
7       counsel were equally ineffective.

8       A criminal defendant has the right to the assistance of counsel under
        both the Sixth Amendment to the United States Constitution and
9       article I, section 15, of the California Constitution. (*People v.
        Ledesma* (1987) 43 Cal.3d 171, 215, 233 Cal.Rptr. 404, 729 P.2d
10      839.) This right "entitles the defendant not to some bare assistance
        but rather to effective assistance. [Citations.] Specifically, it entitles
11      him [or her] to 'the reasonably competent assistance of an attorney
        acting as his [or her] diligent conscientious advocate.' [Citations.]"
12      (*Ibid.* quoting *United States v. DeCoster* (D.C.Cir. 1973) 487 F.2d
        1197, 1202.) "'In order to demonstrate ineffective assistance of
13      counsel, a defendant must first show counsel's performance was
        "deficient" because his [or her] "representation fell below an
14      objective standard of reasonableness ... under prevailing professional
        norms." [Citations.] Second, he [or she] must also show prejudice
15      flowing from counsel's performance or lack thereof. [Citation.]
        Prejudice is shown when there is a "reasonable probability that, but
16      for counsel's unprofessional errors, the result of the proceeding
        would have been different. A reasonable probability is a probability
17      sufficient to undermine confidence in the outcome."'" (*In re Harris*
        (1993) 5 Cal.4th 813, 832–833, 21 Cal.Rptr.2d 373, 855 P.2d 391;
18      accord, *Strickland v. Washington* (1984) 466 U.S. 668, 687, 104
        S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693.) The burden of proving a
19      claim of ineffective assistance of counsel is squarely upon the
        defendant. (*People v. Camden* (1976) 16 Cal.3d 808, 816, 129
20      Cal.Rptr. 438, 548 P.2d 1110.)

21      Defendants have not carried their burden. Even assuming (1) counsel
        would have been able to establish Ellison in fact made the post to his
22      Facebook page, (2) the post indeed meant Ellison had decided to
        return to an active gang lifestyle, (3) defendants are correct that the
23      Facebook post was relevant to establish (a) Neal was just as likely to
        have fired first as were Adam and Isaac, (b) Ellison likely drove the
24      Taurus in between the first car and the Explorer in order to force
        defendants to stop in front of his house, and (c) contrary to Boyd's
25      testimony, Ellison did not purchase the handgun solely because he
        was afraid of being attacked for having cooperated with the police,
26      and (4) the post was not inadmissible hearsay because it evidenced
        Ellison's then-existing state of mind, we cannot conclude exclusion
27      of this evidence would have been an abuse of discretion under
        Evidence Code section 352 or a violation of their constitutional right
28      to due process.

                                     26

Evidence Code section 352 provides: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." Our Supreme Court has explained this section "permits the trial judge to strike a careful balance between the probative value of the evidence and the danger of prejudice, confusion and undue time consumption," but "requires that the danger of these evils substantially outweigh the probative value of the evidence." (*People v. Lavergne* (1971) 4 Cal.3d 735, 744, 94 Cal.Rptr. 405, 484 P.2d 77; see also *People v. Holford* (2012) 203 Cal.App.4th 155, 168, 136 Cal.Rptr.3d 713.) Rulings under this provision "come within the trial court's discretion and will not be overturned absent an abuse of that discretion." (*People v. Minifie* (1996) 13 Cal.4th 1055, 1070, 56 Cal.Rptr.2d 133, 920 P.2d 1337.)

Here, the Facebook post was minimally probative of defendants' claim of self-defense. Even assuming the post established in the jurors' minds that Ellison possessed the gun, not simply for protection, but also for gang purposes, i.e., confrontation, and Ellison deliberately cut off the Explorer while pulling into his driveway, neither fact would justify defendants' actions of opening fire on Ellison's car. The only purported fact that would justify such an assault is Neal's firing at the Explorer first, or at the very least, pointing Ellison's gun in defendants' direction, and thereby causing a reasonable belief in the need to employ deadly force in self-defense. But the Facebook post was made by Ellison, not Neal. There is no dispute Neal was the one who fired Ellison's gun. Indeed, Ellison was apparently hit before he could put the car in park. Ellison's post was therefore relevant on the issue of Neal's conduct only if Neal was aware of the post. In other words, Ellison's decision to return to gang life, by itself, does not tend to prove anything about Neal. However, Neal's belief Ellison was out of the gang life would tend to make it less likely that he would take it upon himself to use Ellison's gun to fire upon another vehicle in front of Ellison's house had occupants of that vehicle not fired first. Conversely, Neal's belief Ellison had returned to the gang life would tend to make his firing first in these circumstances more likely. But how much more likely? We conclude the answer is "not much." The evidence established Ellison had offered testimony against a rival gang member, had been threatened for having done so, and was pulling into his driveway when the shooting occurred. In these circumstances, regardless of whether Ellison had decided to return to the gang lifestyle, and regardless of whether Neal was aware of this decision, opening fire on an Explorer full of gang members in front of Ellison's house, and in a driveway with no means of escape when the occupants of the Explorer predictably returned fire, is so unlikely as to be implausible.

Weighing against this low level of probative value is the reality that admission of the evidence would have required a significant consumption of time. The defense would have been required to establish what we have assumed in our analysis thus far, i.e., the post was in fact made by Ellison, the post indeed meant Ellison had returned to an active gang lifestyle, and Neal was aware of his return

1

2

3

4

5

6

7

8

9

10

11

12

13

to this lifestyle. In light of the minimal probative value of the evidence, we cannot conclude the trial court would have abused its discretion by excluding the evidence under an Evidence Code section 352 analysis. Nor are we persuaded such a decision would have amounted to a deprivation of due process. While defendants are correct to point out Evidence Code section 352 "must bow to the due process right of a defendant to a fair trial and his [or her] right to present all relevant evidence of significant probative value to his [or her] defense[,] ... the proffered evidence must have more than slight relevancy to the issues presented. [Citation.]" (*People v. Burrell–Hart* (1987) 192 Cal.App.3d 593, 599, 237 Cal.Rptr. 654; *People v. Reeder* (1978) 82 Cal.App.3d 543, 553, 147 Cal.Rptr. 275.) Here, as we have already explained, the Facebook post did not have significant probative value.

In sum, because admission of the Facebook post would have necessitated an undue consumption of time and the post was not significantly probative of defendants' claim of self-defense, the trial court would not have abused its discretion or violated defendants' due process rights by excluding the evidence under Evidence Code section 352 had defendants' respective counsel pressed for a ruling on the matter. Thus, regardless of whether reasonable counsel would have pressed for such a ruling, our confidence in the outcome is not undermined.

14   (People v. Cornejo, 3 Cal.App.5th at 54-58.)

15                         Applicable Legal Standards & Analysis

16          As a general rule, "[a] federal habeas court will not review a claim rejected by a state

17   court 'if the decision of [the state] court rests on a state law ground that is independent of the

18   federal question and adequate to support the judgment.'"  Walker v. Martin, 562 U.S. 307, 314

19   (2011) (quoting Beard v. Kindler, 558 U.S. 53, 55 (2009)).  However, a reviewing court need not

20   invariably resolve the question of procedural default prior to ruling on the merits of a claim.

21   Lambrix v. Singletary, 520 U.S. 518, 524-25 (1997); see also Franklin v. Johnson, 290 F.3d 1223,

22   1232 (9th Cir. 2002) ("Procedural bar issues are not infrequently more complex than the merits

23   issues presented by the appeal, so it may well make sense in some instances to proceed to the

24   merits if the result will be the same"); Busby v. Dretke, 359 F.3d 708, 720 (5th Cir. 2004) (noting

25   that although the question of procedural default should ordinarily be considered first, a reviewing

26   court need not do so invariably, especially when the issue turns on difficult questions of state

27   law).  Where deciding the merits of a claim proves to be less complicated and less time-

28   consuming than adjudicating the issue of procedural default, a court may exercise discretion in its

1  management of the case to reject the claim on the merits and forgo an analysis of procedural

2  default.  See Franklin, 290 F.3d at 1232 (citing Lambrix, 520 U.S. at 525).  The undersigned finds

3  it less time-consuming to address the merits of the claim.

4        It is well-settled that a criminal defendant has a constitutional right to present a defense.

5  Crane v. Kentucky, 476 U.S. at 690.  This right is not, however, without limitation.  "The accused

6  does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise

7  inadmissible under standard rules of evidence."  Taylor v. Illinois, 484 U.S. 400, 410 (1988).

8  "[S]tate and federal rulemakers have broad latitude under the Constitution to establish rules

9  excluding evidence from criminal trials."  United States v. Scheffer, 523 U.S. at 308; see Crane,

10  476 U.S. at 689-690; Marshall v. Lonberger, 459 U.S. 422, 438, n.6, (1983); Chambers v.

11  Mississippi, 410 U.S. at 302-303; Spencer v. Texas, 385 U.S. 554, 564 (1967).  "Thus, a trial

12  judge may exclude or limit evidence to prevent excessive consumption of time, undue prejudice,

13  confusion of the issues, or misleading the jury.  The trial judge enjoys broad latitude in this

14  regard, so long as the rulings are not arbitrary or disproportionate."  Menendez v. Terhune, 422

15  F.3d 1012, 1033 (9th Cir. 2005) (citations omitted); see Montana v. Egelhoff, 518 U.S. 37, 42-43

16  (1996) (holding due process rights are not violated by exclusion of relevant evidence where

17  probative value is outweighed by danger of prejudice or confusion).

18        Federal Rule of Evidence 403, the federal counterpart to California Evidence Code section

19  352, permits the exclusion of evidence if its probative value is "substantially outweighed by a

20  danger of...unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time,

21  or needlessly presenting cumulative evidence."  "A district court is accorded a wide discretion in

22  determining the admissibility of evidence under the Federal Rules.  Assessing the probative value

23  of [the proffered evidence], and weighing any factors counseling against admissibility is a matter

24  first for the district court's sound judgment under Rules 401 and 403...."  United States v. Abel,

25  469 U.S. 45, 54 (1984); see Boyd v. City and Cnty. of San Francisco, 576 F.3d 938, 948 (9th Cir.

26  2009).  California employs a similar rule.  See People v. Harris, 37 Cal.4th 310, 337 (2005) ("We

27  review for abuse of discretion a trial court's rulings on the admissibility of evidence").

28  ////

1    Under these guidelines, this court cannot find that the exclusion of the Facebook posts was

2    an abuse of discretion or unreasonable or contrary to federal law.

3    Here, petitioner and his codefendants had an opportunity to cross-examine the prosecution

4    witnesses about Ellison's past gang history and argue that Ellison had re-entered gang life.  (See,

5    e.g., LD 7 365-414, 416-20, 422-24, 433-34.)  Petitioner argues that he should have been able to

6    introduce additional extrinsic evidence in support of that argument.  But the trial court properly

7    determined that such evidence was not sufficiently relevant in this case.  The proffered evidence,

8    although relevant, had limited probative value.  (LD 7 425-28.)  The trial court acted well within

9    its discretion and within the bounds of the Confrontation Clause in determining that the limited

10   probative value of the evidence was outweighed by the undue consumption of time that the

11   presentation of such evidence would require as well as the danger of confusion to the jury.  See

12   United States v. Scheffer, 523 U.S. at 314 (noting that "collateral litigation prolongs criminal

13   trials and threatens to distract the jury from its central function of determining guilt or

14   innocence").  The trial court had legitimate concerns that proving up that Neal was aware that

15   Ellison had returned to gang life based on the Facebook posts would have resulted in a "minitrial"

16   that would have unduly complicated the matter.

17   In short, excluding the proffered evidence here did not violate the Confrontation Clause or

18   petitioner's right to present a defense, nor was it contrary to any clearly established Supreme

19   Court authority.  See Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986); cf. Guasch v. Cates,

20   No. C 10-5628, 2011 WL 2471029, at *11 (N.D. Cal. June 22, 2011) ("To have allowed a trial

21   within a trial, that is, a trial of a witness's unrelated and as-yet unproven credit-card wrong within

22   petitioner's own trial for trying to kill his wife would have been unwise.  Defense efforts like this

23   are routinely and rightly rejected without doing any damage to the Sixth Amendment").

24   Accordingly, petitioner cannot show that his constitutional rights were violated by the

25   exclusion, and for the same reasons, he fails to show that counsel was ineffective for failing to

26   press the trial court for a ruling on the evidence's admissibility to prove self-defense.  See Rupe v.

27   Wood, 93 F.3d 1434, 1444-45 (9th Cir. 1996) (defense counsel's failure to raise a meritless

28   argument or to take a futile action does not constitute ineffective assistance of counsel).  In sum,

30

1    petitioner is not entitled to relief and it is hereby recommended the claim be denied.

2              E.  *Cumulative Error*

3              Petitioner's fifth and final claim is that the cumulative effect of the errors alleged herein

4    constitute a denial of due process.  (ECF No. 1 at 32; see also LD 19 at 28-29 [Petition for

5    Review; Claim IV].)  Respondent contends the state court reasonably rejected petitioner's claim

6    of cumulative error.  (ECF No. 12 at 37-38.)

7              The Ninth Circuit has concluded that under clearly established United States Supreme

8    Court precedent the combined effect of multiple trial errors may give rise to a due process

9    violation if it renders a trial fundamentally unfair, even where each error considered individually

10   would not require reversal.  Parle v. Runnels, 505 F.3d 922, 927 (9th. Cir. 2007) (citing Donnelly

11   v. DeChristoforo, 416 U.S. 637, 643 (1974), and Chambers v. Mississippi, 410 U.S. at 290).

12   "The fundamental question in determining whether the combined effect of trial errors violated a

13   defendant's due process rights is whether the errors rendered the criminal defense 'far less

14   persuasive,' Chambers, 410 U.S. at 294, and thereby had a 'substantial and injurious effect or

15   influence' on the jury's verdict."  Parle, 505 F.3d at 927 (quoting Brecht v. Abrahamson, 507 U.S.

16   at 637).  See also Hein v. Sullivan, 601 F.3d 897, 916 (9th Cir. 2010) (same).

17             This court has addressed each of petitioner's claims and has concluded that no error of

18   constitutional magnitude occurred.  This court also concludes that the alleged errors, even when

19   considered together, did not render petitioner's defense "far less persuasive," nor did they have a

20   "substantial and injurious effect or influence on the jury's verdict."  Accordingly, petitioner is not

21   entitled to relief on his claim of cumulative error and it is recommended the claim be denied.

22   VII.  Conclusion

23             For all of the reasons set forth above, IT IS HEREBY RECOMMENDED that petitioner's

24   application for a writ of habeas corpus be denied.

25             These findings and recommendations are submitted to the United States District Judge

26   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **thirty** days after

27   being served with these findings and recommendations, any party may file written objections with

28   the court and serve a copy on all parties.  Such a document should be captioned "Objections to

                                                    31

1    Magistrate Judge's Findings and Recommendations."  If petitioner files objections, he shall also

2    address whether a certificate of appealability should issue and, if so, why and as to which issues.

3    A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the applicant has made a

4    substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(3).  Any

5    response to the objections shall be filed and served within fourteen days after service of the

6    objections.  The parties are advised that failure to file objections within the specified time may

7    waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153, 1156 (9th

8    Cir. 1991).

9    Dated:  April 23, 2020

10

11
     /vasq0853.157
12                                                    _____
                                                      KENDALL J. NEWMAN
13                                                    UNITED STATES MAGISTRATE JUDGE

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28